**In re GRAND JURY SUBPOENA DUCES TECUM.**

**Appeal of Forrest ROBERTS and Thomas Ruck, et al., Intervenors-Appellants.**

**No. 84–8648**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

March 4, 1985.

---

David F. Walbert, Atlanta, Ga., for intervenor-appellant Thomas Ruck.

Nancy Lawler, Atlanta, Ga., for intervenor-appellant Forrest Roberts.

Janet F. King, Asst. U.S. Atty., Atlanta, Ga., for appellee.

Before RONEY, FAY and JOHNSON, Circuit Judges.

**PER CURIAM:**

In this appeal, a law firm and certain of its clients challenge an order of the district court that denied their motions to quash grand jury subpoenas which had directed the attorneys to produce records reflecting, *inter alia*, the clients' financial status, business activities, payment of taxes, and involvement in litigation. Because the Supreme Court's decision in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), is controlling, we affirm the order of the district court.

Identical subpoenas were served upon a law firm requesting records and documents concerning two clients, their families, and certain corporations with which the clients had some association.[1] The district court permitted the persons and corporate entities affected by the subpoenas to intervene, but after reviewing the subpoenaed materials *in camera* the court rejected their claim that the Fifth Amendment and attorney-client privilege barred discovery.

Addressing initially the appellants' Fifth Amendment claim, the district court correctly interpreted *Fisher* to hold

1. The subpoenas sought the following records dating back to January 1, 1977:

   1. Retained copies of tax returns (federal, state, local) prepared.
   2. Retained copies of financial statements prepared.
   3. Workpaper files related to preparation of returns and/or financial statements.
   4. Books and records used in preparation of returns and/or financial statements.
   5. Real estate transactions for the above-named including: closing statements, disclosure statements, ledger sheets, deeds, mortgages, trusts, real estate notes, assignments, transfers and any and all other related real estate records pertaining to the above-listed periods.
   6. Records of money received from any and all of the above-named individuals that was put into escrow accounts during the above-listed period including the form (cash, checks, etc.) of these funds.
   7. Records of expenditures made on behalf of the above listed individuals/corporations (cash, check, etc.).
   8. Investment transactions for any of the above-named individuals/corporations including transactions for nominees and trusts made during the above-listed period.
   9. An itemized list of attorney fees received from the above-named individuals/corporations including a very general description of the services the fees were for including the form (cash, checks, etc.) of these funds during the above-listed period.
   10. List of names of all business ventures incorporated for the above-named individuals, including applications, registrations, articles of incorporation, charters, minutes, stock certificates and ledgers and any and all other records pertaining to corporations, and other businesses formed by the above-named individuals during the above-listed period.
   11. A list of civil and criminal actions, suits and judgments that have been filed that were handled for or related to the above-named individuals and businesses that occurred, continued or was settled during the above-listed period.
   12. Detailed records relating to any and all matters of item (10) above.
   13. Articles of incorporation, stock certificate books, or any other corporate or personal records of the above-named corporations and/or individuals.

that, since the Fifth Amendment bars only compelled *self*-incrimination, it does not alone preclude production by an attorney of documents concerning his client. *See Fisher, supra,* 425 U.S. 396–97, 96 S.Ct. 1573–74; *Couch v. United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973) ("[T]he Fifth Amendment privilege is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him."). *Fisher* acknowledged, however, that if under the circumstances the attorney-client privilege is also implicated, the Fifth Amendment can operate to provide a basis for quashing a subpoena of certain types of materials. As pronounced in *Fisher,* the compelled discovery of a "pre-existing" document—a document which the client has placed in the hands of his attorney, as opposed to documents which were created as communications between the attorney and the client—is barred by the attorney-client privilege " 'when the client himself would be privileged from production of the document, either as a party at common law ... *or as exempt from self-incrimination....*' " *Fisher, supra,* 425 U.S. at 404, 96 S.Ct. at 1578, quoting 8 J. Wigmore, Evidence § 2307, at 592 (emphasis added). Yet the Supreme Court went on to hold that under the facts and circumstances presented in *Fisher* neither the contents of the subpoenaed documents nor the mere act of producing the documents involved testimonial self-incrimination. Similarly, the district court in this case expressly found that complying with the subpoenas would not implicate the intervening litigants in any compelled testimonial self-incrimination. Thus, implicitly assuming that the attorney-client privilege existed with respect to subpoenaed pre-existing documents, the district court concluded that the appellants were not entitled to Fifth Amendment protection.

The district court then reviewed the contents of each file of subpoenaed materials to determine whether any of the documents both had been created as communications between the attorneys and their clients and otherwise satisfied the prerequisites for protection under the attorney-client privilege. Among the subpoenaed materials, the court found only two letters from the attorneys to their clients which were held protected from discovery. Other items were ruled outside the scope of the subpoenas as drafted and are not at issue in this appeal.

The appellants contend that the recent Supreme Court decision in *United States v. Doe,* —— U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), rendered the ruling in *Fisher* no longer viable. In *Doe,* the target of a grand jury investigation challenged subpoenas similar in subject matter to, but more extensive than, the subpoenas the appellants challenge here. Since in *Doe* the target himself received the subpoenas and the documents were in his possession, no attorney-client privilege was at issue. Nevertheless, the Supreme Court expressly followed selected portions of its analysis in *Fisher* and questioned whether the mere act of production would implicate the appellant in any testimonial self-incrimination. In *Fisher,* the Supreme Court had concluded that, regardless of how incriminating the contents of the subpoenaed documents were, the act of producing them would not involve testimonial self-incrimination. 425 U.S. at 410–11, 96 S.Ct. at 1580–81. In *Doe,* however, the district court had expressly found that the act of producing the documents *would* involve testimonial self-incrimination since, by producing the subpoenaed documents, the appellant would admit that the records existed, were in his possession, and were authentic. *In re Grand Jury Empanelled March 19, 1980,* 541 F.Supp. 1, 3 (D.N.J.1981). The Court of Appeals had affirmed this finding, *In re Grand Jury Empanelled March 19, 1980,* 680 F.2d 327, 335 (3d Cir.1982), and the Supreme Court declined to overturn the lower courts. 104 S.Ct. at 1243.

■■■ The *Doe* decision does not alter the ruling in *Fisher.* By contrast, it reaffirms one aspect of *Fisher:* the act of production alone can constitute self-incriminating testimony if it forces the subject of the subpoena to admit the existence of the

subpoenaed documents, his possession and control of the documents, and their authenticity. In the instant case, however, the district court found that complying with the subpoenas would not implicate the appellants in any compelled testimonial self-incrimination.[2] The appellants have not challenged this finding as erroneous, and we decline to overturn *sua sponte.* The order of the district court is AFFIRMED.

---

2. Although the district court did not make specific findings regarding admission of the existence, possession, or authenticity of the subpoenaed documents, we assume these considerations are subsumed in the court's broadly-worded finding that production does not implicate the appellants in any compelled testimonial self-incrimination.