[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12248
Non-Argument Calendar

_____

D.C. Docket No. 1:08-cv-00945-TCB

ROBBIE S. JOHNSON,
individually, as Trustee of the Robbie
S. Johnson Revocable Trust, a Florida Trust,
and as Trustee of the Lorraine Wagman
Revocable Trust, a Florida Trust, et. al.,

Plaintiffs - Appellees,

versus

MITCHELL ALAN GROSS, etc., et al.,

Defendants,

JEROME J. FROELICH,

Interested Party - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 4, 2015)

Before WILLIAM PRYOR, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Jerome J. Froelich, Jr., an attorney proceeding *pro se*, appeals the district court's order of contempt after he refused to comply with a subpoena seeking the production of any communications made between himself and certain third parties during the representation of his client, Mitchell Gross, in a criminal case. After reviewing the record and Mr. Froelich's brief, we affirm.

# I

On March 13, 2008, Robbie Johnson, on behalf of himself and others, filed a civil suit against Mitchell Gross, 5th Ring Enterprises, and Debra Gross seeking damages and injunctive relief. On June 13, 2008, the parties in that case settled and agreed to the entry of a consent judgment, which awarded the plaintiffs approximately $3.5 million. Prior to the settlement, Mr. Gross signed an "Authorization for Law Firm Records Release and For Deposition/Interview" which provided, in part, as follows:

> This authorization permits Plaintiffs' designees . . . to inspect the original of all records of any nature in the possession, custody, or control of [Mr. Gross' lawyer or law firm], including but not limited to correspondence . . . and to request and receive copies of records of same concerning directly or indirectly any work done on behalf of [Mr. Gross.]

2

In the Release Mr. Gross waived all his privileges, including attorney-client and work product, with the exception of his constitutional rights, to the extent that he asserted those rights on matters unrelated to his "Undisclosed Assets."

On August 24, 2011, a federal grand jury indicted Mr. Gross on several counts of wire fraud and money laundering. Mr. Gross retained Mr. Froelich to represent him. Several months later, Mr. Johnson served Mr. Froelich with a subpoena, seeking the production of all communications from Mr. Froelich to certain third parties during his representation of Mr. Gross. Mr. Froelich refused to comply with the subpoena, claiming that the documents were immune from disclosure under the work-product doctrine and that the subpoena was overly broad and unreasonable. The district court overruled his objections and ordered Mr. Froelich to comply.

After Mr. Froelich mounted several unsuccessful challenges to the order, the district court held a telephone conference regarding his failure to comply with the subpoena. Mr. Froelich reiterated his objections, which the district court again overruled. Subsequently, the district court ordered Mr. Froelich to produce the documents and, upon his refusal, held him in contempt. Mr. Froelich timely appealed.

On appeal, Mr. Froelich argues that (1) the district court erred in enforcing the subpoena because it sought the production of privileged documents; (2) the

3

Release did not apply to the requested documents because it only waived Mr. Gross' work-product privilege with respect to matters unrelated to his criminal case; (3) Mr. Froelich had the authority to independently assert the work-product privilege to protect his own work; (4) disclosure of the documents would subvert Rule 16 of the Federal Rules of Criminal Procedure; and (5) the subpoena infringed upon Mr. Gross' Fifth and Sixth Amendment rights.

## II

"District courts are entitled to broad discretion in managing pretrial discovery matters . . . , including when ruling on the applicability of the work-product doctrine[.]" *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013) (citations omitted). "Nevertheless, 'this discretion over discovery issues is not wholly unfettered.' We therefore review the district court's [ruling] under the abuse of discretion standard." *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002) (citations omitted). *See also United States v. Roxworthy*, 457 F.3d 590, 592 (6th Cir. 2006) ("We review a district court's work product privilege determination for abuse of discretion."). The same abuse of discretion standard applies to the district court's civil contempt order. *See In re Managed Care*, 756 F.3d 1222, 1232 (11th Cir. 2014).

We review *de novo* interpretations of Federal Rules of Civil Procedure 26 and 45. *See Hinchee*, 741 F.3d at 1188. We will affirm the ruling of the district

4

court so long as its legal conclusions were correct and the record contains evidence upon which the district court rationally could have based its decision.  *See Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir. 2005).

### III

Ordinarily, under the work-product doctrine "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]"  Fed. R. Civ. P. 26(b)(3)(A). Such "work product" is reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways[.]"  *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). The party invoking the work-product privilege bears the burden of establishing that the privilege applies.  *See Hinchee*, 741 F.3d at 1189.

Rule 26(b)(5)(A) requires that the party seeking to "withhold[] information otherwise discoverable by claiming that the information is . . . subject to protection as trial-preparation material" must (1) "expressly make the claim," and (2) describe the nature of the items not produced or disclosed in a manner that will enable other parties to assess the claim.  *See id.*  "Blanket assertions of privilege before a district court are usually unacceptable . . . .  Instead, [an attorney] must present himself with his records for questioning, and as to . . . *each* record elect to raise or not to

raise the defense." *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987) (emphasis in the original).

Mr. Froelich argues that the work-product doctrine protects the subpoenaed communications, notwithstanding the waiver contained in the Release signed by Mr. Gross. Mr. Froelich contends that, as an attorney, he possesses a privilege that is separate and distinct from his client's, and which he may raise to protect his own work. *See In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) ("An attorney's independent assertion of his work product privilege . . . stands on a very different footing because the attorney's privilege is based on the attorney's interest in protecting his opinions and thought processes from disclosure.").[1]

Assuming without deciding that Mr. Froelich is correct on this point, his argument nevertheless fails because he did not meet his burden of establishing that the work-product doctrine applies to the subpoenaed documents. Contrary to Rule 26(b)(5)(A)'s requirements, Mr. Froelich did not describe the nature of the undisclosed communications in a manner that allowed the plaintiffs and the distrct court to evaluate his claimed privilege. Nor did he give a reason why the work-product doctrine should apply to all of the communications. Instead, when opposing counsel noted that Mr. Froelich had not provided a privilege log or

---

[1] Mr. Froelich also asserts that the Release is inapplicable to the documents subpoenaed by the plaintiffs because the Release only purports to waive Mr. Gross' work-product privilege as it relates to undisclosed assets. This argument, however, fails because we conclude that Mr. Froelich did not sufficiently show that the privilege applies to the documents.

attempted to parse out the communications that would be privileged, Mr. Froelich replied, "I don't parse it out. That's not my job[.]"  D.E. 184 at 7-8.  *See also* D.E. 184 at 7 (Opposing Counsel: "I haven't even received a privilege log saying that these are all privileged[.]")  Mr. Froelich was incorrect on the law, and he failed to show that the subpoenaed communications were privileged.  *See In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim.").

Mr. Froelich also contends that, under Rule 16 of the Federal Rules of Criminal Procedure, the subpoenaed documents were undiscoverable.  Specifically, he says that, under Rule 16(b)(2)(B), statements "made to the defendant or the defendant's attorney or agent by . . . a government or defense witness" are not subject to discovery.  He asserts that permitting civil litigants to access such documents would subvert Rule 16, making otherwise undiscoverable materials available to the public.  Mr. Froelich, however, ignores the fact that he never submitted a privilege log to the district court identifying the communications as witness statements.  Rule 26 sufficiently protects information of the type described by Mr. Froelich.  Indeed, "an attorney's notes and memoranda of a witness's oral statements is considered to be opinion work product[,]" which "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th

Cir. 1994).    Had Mr. Froelich sufficiently established that the work-product doctrine protected certain (or all of the) documents, those documents would have been immune from disclosure.

Mr. Froelich also argues that the subpoena was overly broad and unreasonable because it did not contain any limitations on the time and subject matter of the communications sought and only provided him with three business days to comply.    The record shows, however, that as a courtesy Mr. Johnson provided Mr. Froelich with a copy of the subpoena several weeks before Mr. Johnson officially served it.    With respect to the subpoena's scope, Mr. Froelich had only acted as Mr. Gross' attorney for approximately seven months at the time he received the subpoena.    Thus, the date range of the documents was necessarily limited to a reasonable time.    On this record, we cannot say that the district court abused its discretion by enforcing the subpoena.[2]

Lastly, Mr. Froelich makes passing references to the notion that the documents are undiscoverable because their disclosure would infringe upon his client's "Fifth and Sixth Amendment rights to due process, a fair trial, and effective representation." App. Br. at 17.    He did not, however, adequately address this argument in his brief.    Thus, we deem the argument abandoned and will not

---

[2] In addition, Mr. Froelich claims that the subpoena exceeded the 100-mile limitation imposed by Federal Rule of Civil Procedure 45(c).    He did not, however, raise this claim in the district court.    Therefore, we need not consider it on appeal. *See Starship Enter. of Atl., Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1254 (11th Cir. 2013).

8

address it on appeal.  *See United States v. King*, 751 F.3d 1268, 1277 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.") (citations omitted).

## IV

For the foregoing reasons, we conclude that the district court did not abuse its discretion in enforcing the subpoena or holding Mr. Froelich in contempt for failing to comply with its order.

**AFFIRMED.**